IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | : |
| Plaintiff, | : |
| v. | : CIVIL ACTION NO.<br>: 1:19-CR-0326-AT-1 |
| RODNEY DWAYNE BRENDLE, | : |
| Defendant. | : |

# **ORDER**

Presently before the Court is Magistrate Judge Catherine M. Salinas's Report and Recommendation ("R&R") [Doc. 122] recommending that the Court deny Defendant's first and supplemental motions to suppress evidence related to a warrantless search in this case [Doc. 27, 34] as well as his motion to suppress evidence obtained from the cell phone warrant [Doc. 33]. Defendant Brendle has filed objections to the R&R [Doc. 124].

A district judge has broad discretion to accept, reject, or modify a magistrate judge's proposed findings and recommendations. *United States v. Raddatz*, 447 U.S. 667, 680 (1980). Pursuant to 28 U.S.C. § 636(b)(1), the Court reviews any portion of the R&R that is the subject of a proper objection on a *de novo* basis and any non-objected portion on a "clearly erroneous" standard. The Defendant objects on several factual and legal grounds to the Magistrate Judge's

Report and Recommendation. The Court has carefully reviewed *de novo* each of the issues raised in the objections that go to the heart of the conclusions reached in the R&R. Upon conducting an independent, *de novo* review of the briefs and record in this case, the Court finds that the Magistrate Judge's recommendations are consistent with controlling law based on the record presented and should be **ADOPTED** as discussed below.

Defendant Rodney Dwayne Brendle contends in the suppression motions that his Fourth Amendment rights were violated when Georgia State Patrol troopers, in tandem with the investigation conducted by the United States Drug Enforcement Administration ("DEA"), conducted a warrantless search of his vehicle without probable cause. Defendant argues that the State Patrol Officer in charge of the traffic stop of Brendle's vehicle, Trooper Forrester, neither had a legitimate law enforcement basis for stopping the vehicle nor a probable cause basis for searching the vehicle. The bulk of the disputes raised in Defendant's objections to the Magistrate Judge's denial of his motion to suppress evidence and first supplemental motion revolve around the warrantless search of Defendant's car in this case. (Docs. 27, 34.) Defendant's motion to suppress cell phone evidence (Doc. 33) similarly directly emanates from the search of Brendle's vehicle based on a "fruit of the poison tree" theory. Defendant vigorously litigated the suppression motions and presented substantial briefs as well as the record of a full evidentiary hearing before the Magistrate Judge.

The Magistrate Judge concluded that Defendant's motions to suppress evidence must be denied because the Government showed that State Trooper Forrester possessed imputed knowledge of Brendle's transportation of methamphetamine based on communications from a lead DEA agent engaged with other agents in a drug trafficking investigation. Earlier on the day of Brendle's arrest, the DEA agents allegedly witnessed drugs being transferred to and within Brendle's vehicle that was parked in a Walmart lot and also witnessed the car's departure from the lot. The agents observed Brendle's alleged drug trafficking activity in the course of conducting surveillance of Alexis Ortiz, another suspected drug trafficker, who was allegedly conducting drug trafficking activities in the Walmart parking lot. One of the DEA agents in turn relayed information by phone to State Trooper Forrester concerning the Honda vehicle that had departed the lot, including that this vehicle was carrying one to two kilograms of methamphetamine. Trooper Forrester, who was working elsewhere, was on standby to offer assistance to the DEA task force as needed in connection with the DEA operation. Trooper Forester was ultimately directed to stop and search the vehicle as well as to arrest the individuals in the car as appropriate. He also was advised by his State Patrol colleagues, who also assisted the DEA, to independently develop a probable cause basis for the search of the vehicle

As summarized by the Magistrate Judge, "Brendle argues that Trooper Forrester could not have lawfully searched the Honda because he was not

3

personally aware of all the facts that amount to probable cause" that were the basis of his search. (R&R at 13.) But the "collective knowledge" doctrine may be applied in a context such as this one where a group of law enforcement officers are deployed in an investigation in different capacities. "Probable cause . . . exists where the facts and circumstances within the collective knowledge of law enforcement officials, of which they had reasonably trustworthy information, are sufficient to cause a person of reasonable caution to believe that an offense has been committed." *United States v. Willis*, 759 F.2d 1486, 1494 (11th Cir. 1985) (citations omitted). *See also, U.S. v. Wilson*, 894 F.2d 1245, 1254 (11th Cir. 1990) ("[W]hen the facts and circumstances would lead a reasonably prudent [person] to believe that the vehicle contains contraband,'" probable cause exists.) (quoting *United States v. Clark*, 559 F.2d 420, 424 (5th Cir.), *cert. denied*, 434 U.S. 969, 98 S.Ct. 516, 54 L.Ed.2d 457 (1977)). We focus not on each fact in isolation but "'the sum total of layers of information and the synthesis of what the police have heard, what they know, and what they observe as trained officers.'" *Clark*, 559 F.2d at 424 (quoting *Smith v. United Sta*tes, 358 F.2d 833, 837 (D.C.Cir.1966)). Moreover, when a group of officers is conducting an operation and there exists at least minimal communication between them, their collective knowledge is determinative of probable cause. *United States v. Esle*, 743 F.2d 1465, 1476 (11th Cir.1984).

In summary, the collective knowledge of the officers as a group can be imputed to a single officer who conducts a stop and search where that officer maintained at least a minimal level of communication during the investigation. *Willis*, 759 F.2d at 1494. *See also*, R&R at 15-17 (identifying cases finding sufficient communications between DEA and state troopers to establish "collective knowledge" and what constituted adequate communication to provide a probable cause basis for the trooper's stop, search, and arrest of the suspects in the car.)

The Court does not view Defendant's legal challenge to the search as quite as sweeping as might be suggested in the R&R. Defendant does not argue that Officer Forrester had to possess knowledge of *all* of the facts known to the DEA as supporting probable cause. However, Defendant clearly does argue that State Trooper Forrester possessed insufficient personal knowledge regarding salient essential factual details relating to Brendle's or Ortiz's alleged related offense conduct, the DEA investigation, or other knowledge sufficient for the "collective knowledge" doctrine to be properly relied upon as the basis for a finding of probable cause. Plaintiff's objections highlight how Trooper Forrester's variety of admissions made during his testimony at the Motion to Suppress hearing indicate that his specific knowledge surrounding the investigation of Brendle and Ortiz was highly limited. While he knew that the DEA agents had communicated that approximately 2 kilos of methamphetamines had been supposedly loaded

into the Honda vehicle at the Walmart lot and had provided identifying information for this car, he could recall no other specific information relayed to him that would have provided him with probable cause to detain Defendant and search his vehicle for drugs or that explained specifically what the DEA agents had observed. (Tr. 113, 117, 148-151.) Thus, Trooper Forrester confirmed that while the DEA agents advised that there were one or two kilos of methamphetamine in the car, they did not relay information that indicated what facts they actually observed or accumulated in their investigation that caused them to believe that the drugs were present in Brendle's car. (Tr. 150-151.)

Although some bits of information from the evolving DEA investigation on the day of the arrest were included on a real time basis in a DEA group What's App Chat that Forrester had been included in as well a radio communication stream, Officer Forrester's testimony indicates he never heard or picked up that information. His testimony instead, fairly construed, indicates that he viewed his role as limited to assisting the DEA by assuming responsibility for a traffic stop, search, and arrest of the suspect. As he understood the DEA's and his own state patrol peers' instructions, he was charged with conducting a traffic stop of the car allegedly possessing drugs and conducting a search of the car for drugs as well as independently developing probable cause for a search of the car if possible. (Tr. 113, 117, 148-151.) Defendant in summary argues:

> It is not enough for the DEA to simply say to the GSP "'there are drugs in the car." That is not probable cause, but rather the desired conclusion for which probable cause might have been offered. The officer doing the search must be able to articulate facts establishing why, at the level of certainty of probable cause, he believes there to be drugs in the car. The GSP troopers couldn't do that. The Fourth Amendment requirement of having articulable probable cause must be enforced, and the suppression remedy applied, else the potential for abuse is limitless. Any law enforcement officer could stop and search the vehicle of any motorist solely on the say-so of any other officer. That is not consonant with "the right of the people to be secure . . . against unreasonable searches and seizures."

Defendant's Objections, Doc. 124 at 21.

The Court recognizes that the collective knowledge doctrine can degenerate to a rubber stamp chain of communication where the constitutional protection of probable cause is diminished and any "independent" police effort to develop probable cause becomes an artificial back-up feint. However, the current status of the law in the Eleventh Circuit consistently reflects that where the evidence shows a group of officers conducting a law enforcement operation who share at least a minimal amount of communication regarding the operation, "we look to the collective knowledge of the officers in determining probable cause." *United States v. Esle*, 743 F.2d at 1476. Thus, in *Esle*, the Eleventh Circuit found that because the primary investigating officer had sufficient personal knowledge of investigative facts to establish probable cause, the arresting officer's reliance on what another agent told him about cocaine being in the suspect car was sufficient to establish "collective knowledge" and provided a probable cause basis for the

arresting officer's conducting the warrantless search.[1] Brendle's case is indistinguishable from *Esle*. Thus, governing Eleventh Circuit Fourth Amendment precedent clearly supports the Magistrate Judge's R&R conclusion that both the search and the seizure of the phones that were the fruit of that search were lawful.

Having conducted a thorough review of the record in this matter, the Court concludes that the Magistrate Judge's R&R findings and recommendations are analytically sound and provide a correct foundation for the Magistrate Judge's recommendation for the denial of Defendant's three motions to suppress.

Accordingly, the Court **ADOPTS** the Magistrate Judge's Report and Recommendation [Doc. 122] and **DENIES** Defendant's Motions to Suppress [Docs. 27, 33, 34] and **OVERRULES** the related Objections [Doc. 124].

The Court hereby sets the trial date for Rodney Dwayne Brendle as follows: The pretrial conference is set for October 6, 2021, at 10:30 AM in Courtroom 2308. The trial will commence with jury selection to begin on October 8, 2021, 2021, at 9:30 AM in Courtroom 2306.  Opening statements and trial testimony

---

[1] The *Esle* opinion is not clear if the "other agent" was the primary investigating officer, who had personal knowledge, or possibly another officer. *Esle* is comparable to the instant case though.  In *Esle,* "Appellants argue[d] that while Agent Prieto may have had probable cause to believe the cocaine was in the car, Agent Parrish, who made the arrests and searched the car, had no such probable cause. Accordingly, they argue, the search violated their fourth amendment rights. We disagree." 743. F.3d at 1476.

will commence on October 12, 2021.  Defendant is required to attend the pretrial conference or present a written waiver of his attendance.

The following motions and other filing deadlines are set: By September 22 2021, the parties are to file any motions in limine and proposed voir dire questions.  Objections and responses to the motions and proposed voir dire questions are due by September 29, 2021.  Defendant is further directed to file a response to the Government's pending motion in limine [Doc. 137] by September 27, 2021 and the Government's reply should be filed by September 30, 2021. The Government is directed to file a summary of the indictment for use in voir dire by September 24, 2021.  The parties are directed to cooperate in providing proposed jury instructions to the Court by October 12, 2021.  The parties shall use redlining and other common editing features in order to provide a joint submission of the proposed jury instructions and identify any objections that each party has to the opposing party's proposed instruction and the suggestion of alternative proposed language.

The time from September 10, 2021, 2021, through October 8, 2021, shall be excluded from computation under the Speedy Trial Act pursuant to 18 U.S.C. § 3161(h)(7)(A), (h)(7)(B)(i), and (h)(7)(B)(iv).

The parties should be prepared to provide the Courtroom Deputy Clerk with three (3) copies of your respective exhibit and witness lists at the start of trial for use by the Judge, Court Reporter, and Courtroom Deputy Clerk.  Each

party should also provide a courtesy copy of all exhibits for the Judge's use during trial, preferably in an appropriately labeled notebook provided on the first day of trial. The parties are referred to Local Rule 16.4(B)(19)(b), NDGa, concerning the pre-marking of exhibits. The parties <u>must</u> provide a courtesy copy of any documents e-filed just prior to trial or on any day during the course of the trial. Proposed jury instructions shall be submitted by the first day of trial.

Please refer to Judge Totenberg's Guidelines to Parties and Counsel at http://www.gand.uscourts.gov/case-prep-judge-totenberg for information regarding the pretrial conference, voir dire, and courtroom technology. Any training or trial runs regarding the courtroom technology must be scheduled in advance of trial via the Courtroom Deputy Clerk. The Court will not allow time for training or trial runs at the beginning of the trial. Any motions requesting leave to bring technology into the courtroom must be filed no later than three (3) days in advance of trial, to allow time for proper notification to the US Marshals Service.

**IT IS SO ORDERED** this 10th day of September, 2021.

_____
**Honorable Amy Totenberg**
**United States District Judge**